UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                    Plaintiff,

            -v-

LUCIANO MENDEZ-ROJAS,

                    Defendant.

11 Cr. 929 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

This order resolves a *pro se* motion by defendant Luciano Mendez-Rojas for compassionate release from Federal Correctional Institution ("FCI") Allenwood, pursuant to 18 U.S.C. § 3582(c). For the reasons that follow, the Court denies the motion.

**I.**    **Background**

**A. Mendez-Rojas's Prosecution, Plea, Sentencing, Appeal, and § 2255 Petition**

Mendez-Rojas was charged in a series of Indictments culminating, on March 12, 2012, in Indictment S2 11 Cr. 929 (PAE), which charged him with (1) conspiracy to commit the sexual exploitation of a child, in violation of 18 U.S.C. § 2251(e); (2) sexual exploitation of a child, in violation of 18 U.S.C. §§ 2251(b) & 2; (3) receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) & (b)(1); (4) possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B); (5) two counts of transportation and distribution of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(1) & (2)(B). Dkt. 12. As detailed in the Presentence Investigation Report ("PSR"), the charges arose from, *inter alia*, a scheme in which Mendez-Rojas and his wife, Inocencia Ortega, directed their seven-year-old child to film them while they

engaged in sexually explicit conduct; and from Mendez-Rojas's possession, and distribution over the internet, of child pornography. PSR ¶¶ 37–38.

On June 11, 2012, Mendez-Rojas pled guilty to Count Two, charging the sexual exploitation of a child, and Count Five, charging distribution of child pornography. Dkt. 25.

At sentencing, held on April 16, 2013, the Court, after calculating Mendez-Rojas's Guidelines range as between 324 and 405 months' imprisonment, imposed a below-Guidelines sentence of 252 months' (*i.e.*, 21 years) imprisonment. The Court's detailed assessment at sentencing of the 18 U.S.C. § 3553(a) factors emphasized the extraordinary gravity of Mendez-Rojas's offenses, particularly the Count Two child exploitation offense, which carried a 15-year mandatory minimum sentence. Describing the offense conduct as shocking, the Court noted that Mendez-Rojas had forced his young son to work as a pornographer, Dkt. 52 ("Sent. Tr.") at 70–71, adding:

> You exposed your young children to adult sexual activity. You destroyed an essential boundary between parent and child. You destroyed the sanctity of their home. You destroyed the healthy image that a young child should have of their parents individually and as a couple. You destroyed the family unit. And you created the prospect, if not the high likelihood, of lifelong psychological damage to them.

*Id.* at 72; *see also id.* at 74 (describing "incalculable damage" to the lives of Mendez-Rojas's children). The Court found a long sentence for the child exploitation offense necessary as just punishment, to reflect the suffering the defendant had caused among his children, as a general and specific deterrent, and to further the goal of incapacitation. *Id.* at 77.

The Court separately found the Count Five child pornography offense "shocking and horribly wrong." *Id.* at 78. It noted that Mendez-Rojas's home computers and tablets had held some 1,276 child pornography videos, whose content the Court termed "disturbing, exploitative, abusive, and sick," and an additional 275 images of child pornography. *Id.* at 78. That offense,

the Court found, merited a substantial additional prison sentence above that on Count Two, to vindicate the same § 3553(a) factors. Sent. Tr. at 80–81. In fashioning the 252-month prison sentence, the Court also took account of mitigating factors, including Mendez-Rojas's acceptance of responsibility by virtue of his guilty plea, his history of gainful employment, the positive testimonials to him from friends and family, and his history as a victim of sexual abuse. *Id.* at 81–84; *see also* Dkt. 46 (judgment).

Mendez-Rojas appealed his sentence, but, on July 16, 2014, the Second Circuit dismissed his appeal as barred by a waiver provision in his plea agreement. Dkt. 65. On December 4, 2017, this Court dismissed Mendez-Rojas's petition pursuant to 28 U.S.C. § 2255 as untimely. Dkt. 69; *see also* Dkt. 77 (order of April 17, 2020, dismissing petition to reopen § 2255 proceeding).

### B. Mendez-Rojas's Compassionate Release Motion

On August 13, 2024, the Court docketed a *pro se* submission from Mendez-Rojas seeking compassionate release, under 18 U.S.C. § 3582(c)(1)(A). Dkt. 81 ("D. Mem."). Mendez-Rojas's brief submission articulated two bases for release: the deteriorating health conditions of his elderly parents, who reside in Mexico, and for whom Mendez-Rojas proposes to serve "as primary caregiver upon [his] return to Mexico," and the adverse conditions of confinement during the COVID-19 pandemic. *Id.* at 2. It attached letters from Mendez-Rojas to the FCI Allenwood warden and to the Court, plus a chart chronicling his good time credits, the courses he has completed or applied to take while in custody, and photographs and limited medical records of, apparently, his parents. *See generally id.*

On September 6, 2024, the Government filed a memorandum of law opposing Mendez-Rojas's petition. Dkt. 83 ("G. Mem.").

3

**II.  Discussion**

  **A.  Standards Governing Compassionate Release Motions**

"[U]pon motion of the defendant," and "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," the Court may reduce such defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The defendant bears the burden of proving he is entitled to compassionate release. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease." (citations omitted)); *see also, e.g., United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, § 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings; it required the Federal Bureau of Prisons ("BOP") to seek such release on their behalf. *See United States v. Phillibert*, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2021). However, "[a]s part of the First Step Act of 2018, Congress authorized courts to reduce a term of imprisonment upon motion by a defendant." *United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

Although Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence, *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020) (citing 28 U.S.C. § 994(t)), before November 1, 2023, the Sentencing Commission's only guidance on this point had been promulgated prior to the enactment of the First Step Act. This guidance thus applied only to a

4

"motion of the Director of the Bureau of Prisons," *see* U.S.S.G. § 1B1.13 (historical note), and not "to compassionate release motions brought by defendants," *Brooker*, 976 F.3d at 236; accordingly, the Second Circuit held in 2020, this guidance "[could not] constrain district courts' discretion to consider whether any reasons [were] extraordinary and compelling" in such cases, *id.*; *see also id.* at 237 ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."). Thus, through November 1, 2023, when assessing a motion brought by an imprisoned defendant and not the BOP, a district court was not constrained by U.S.S.G. § 1B1.13's enumeration of extraordinary and compelling reasons and could "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Id.* at 237.

Effective November 1, 2023, however, the Sentencing Commission amended the Guidelines to also cover defendant-initiated petitions. *See generally* U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023). The amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated.

The Commission's updated guidance identifies six circumstances that, alone or in combination, may so qualify. U.S.S.G. § 1B1.13(b). These are:

- *Medical circumstances of the defendant.* U.S.S.G. § 1B1.13(b)(1). In addition to previously recognized circumstances such as a defendant suffering from a terminal illness or a serious medical condition, *id.* §§ 1B1.13(b)(1)(A)–(B), the amended guidelines direct courts to consider whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care" that is not being provided in prison and without which the defendant is at risk of serious health deterioration or death, *id.* § 1B1.13(b)(1)(C), or is held at a facility affected by or at imminent risk of being affected by an outbreak of infectious disease or other "ongoing public health emergency declared by the appropriate federal, state, or local authority," where "due to personal health risk factors and custodial status," the defendant is at a greater risk of severe complications upon

exposure, and where "such risk cannot be adequately mitigated in a timely manner." *Id.* § 1B1.13(b)(1)(D). This factor was informed by compassionate release decisions coming out of the COVID-19 pandemic. *See* U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 206 (Nov. 1, 2023).

- *Age of the defendant.* Coupled with a deterioration in physical or mental health corresponding with the aging process as well as the portion of the original sentence served at the time of a compassionate release motion, this may support a sentence reduction. U.S.S.G. § 1B1.13(b)(2).

- *Family circumstances of the defendant.* Where the defendant is the "only available caregiver" for an immediate family member, this may support a sentence reduction. *See id.* § 1B1.13(b)(3).

- *Victim of abuse in custody.* Where the defendant while in custody on the sentence in question was a victim of sexual abuse, or physical abuse resulting in serious bodily injury "committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant," and the misconduct was "established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding," this may support a sentence reduction. *Id.* § 1B1.13(b)(4).

- *Catchall provision.* Where a defendant presents "any other circumstance or [a] combination of circumstances" that themselves or with the above circumstances are similar in gravity to those above, such may support sentence reduction. *Id.* § 1B1.13(b)(5). The Commission "rejected a requirement that 'other reasons' be similar in nature and consequence to the specified reasons. Rather, they need be similar only in gravity[.]" U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 207 ("[T]he Commission continues to believe . . . that judges are in a unique position to determine whether the circumstances warrant a reduction. Guidance beyond that provided in the amended policy statement regarding what circumstances or combination of circumstances are sufficiently extraordinary and compelling to warrant a reduction in sentence is best provided by reviewing courts[.]" *Id.* (cleaned up).

- *Unusually long sentence plus changes in law.* Where a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances. U.S.S.G. § 1B1.13(b)(6).

Finally, even if extraordinary and compelling reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

6

### B.     Application to Mendez-Rojas's Application

For two reasons, the Court denies Mendez-Rojas's application for relief under § 3582(c).[1]

*First*, Mendez-Rojas has not established extraordinary and compelling reasons for a reduction in sentence. He has not identified facts that would make out—or come close to making out—any of the circumstances the Sentencing Commission has identified as qualifying an inmate for early release.

Mendez-Rojas predominantly relies on the representation that his parents are ailing and that, upon return to Mexico, he could serve as their caregiver. As the Sentencing Commission has recognized, where a defendant is the only available caregiver for an ailing immediate family member, such can qualify him for relief under § 3582(c). *See* U.S.S.G. § 1B1.13(b)(3). But Mendez-Rojas's showing as to this ground falls far short for multiple reasons. Beyond stating generally that his parents have "deteriorating health conditions," D. Mem. at 2, Mendez-Rojas's motion does not say what those conditions are, let alone attach evidence corroborating that claim and that his parents are incapacitated from caring from themselves. *See, e.g.*, *United States v. Lindsey*, No. 13 Cr. 271 (LTS), 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021) ("Courts generally require a showing of evidence from several sources indicating that the defendant is the only available caregiver for a family member in dire conditions before concluding that an extraordinary and compelling reason has been established.") (cleaned up); *United States v. Ayala*, No. 16 CR 809 (VM), 2020 WL 6626015, at *1 (S.D.N.Y. Nov. 12, 2020) (same); *United States v. Lisi*, 440 F. Supp. 3d 246, 252 (S.D.N.Y. 2020) (extraordinary and compelling reason

---

[1] The Court assumes *arguendo* that Mendez-Rojas has exhausted his administrative remedies. His submission contains an undated letter to a prison warden seeking compassionate release. *See* Dkt. 81 at 2. The Government represents that the BOP denied his request on July 10, 2024, *see* G. Mem. at 2, while noting that Mendez-Rojas did not appeal the denial of his request to the BOP's regional director, *id.* at 5.

7

exists when defendant has a "close family member who is completely unable to care for himself" and "for whom the defendant would be the only available caregiver").

And Mendez-Rojas's statement that he "could be" his parents' "primary caregiver" does not establish that he is the only available caregiver—that there are no other relatives or friends who can play the role. *See, e.g., United States v. Mojica*, No. 19 Cr. 629 (CS), 2020 WL 6746478, at *1 (S.D.N.Y. Nov. 16, 2020) (denying motion for reduction in sentence brought by inmate based on "the need for him to help with his ailing mother and autistic son," where both had others caring for them, and noting that "hardship on the family almost always results from serious criminal conduct"); *United States v. Cajigas*, No. 08 Cr. 391 (VM), 2020 WL 6625210, at *3 (S.D.N.Y. Nov. 11, 2020) ("Cajigas has made no showing that his fiancé is unable to care for their daughter without him, and indeed she has been doing so over the past few months, albeit with difficulty."); *United States v. John*, No. 15 Cr. 208 (CM), 2020 WL 6581217, at *2 (S.D.N.Y. Nov. 10, 2020) (similar). The needs of Mendez-Rojas's parents, without more, cannot justify relief under § 3582(c). *See, e.g., United States v. Fiseku*, No. 14 Cr. 384-1 (PAE), 2020 WL 7695708, at *4 (S.D.N.Y. Dec. 28, 2020) (prolonged separation from family or inability to attend to their needs did not differentiate defendant from other prisoners); *United States v. O'Bryant*, No. 16 Cr.0317-3 (PAE), 2022 WL 17168192, at *2 (S.D.N.Y. Nov. 22, 2022) (similar).

Mendez-Rojas alternatively notes the arduous conditions of confinement occasioned by the COVID-19 pandemic, including lockdowns and restrictions on movement. D. Mem. at 2. The pandemic was an extraordinary event that undeniably made incarceration more trying than in pre-pandemic times. But Mendez-Rojas has not identified any factor that would not apply to any inmate incarcerated during that period. He has not claimed to have contracted COVID-19,

let alone any unusual or lasting impact of a bout with COVID-19; he has not identified any co-morbidity or condition enhancing the virus's future risk to him; and he does not claim to have been in a facility (such as a municipal jail) where conditions of confinement during the early pandemic tended to be most onerous. *See, e.g.*, *United States v. Romero*, No. 15 Cr. 445 (PAE), 2020 WL 2490027, at *2 (S.D.N.Y. May 14, 2020) (denying compassionate release where defendant failed to proffer any facts suggesting that he was "more likely [to] contract COVID-19 than any other inmate" or was "particularly vulnerable to suffering complications from the virus due to any underlying health condition"); *United States v. Harris*, No. 15 Cr. 445-11 (PAE), 2020 WL 5801051, at *4 (S.D.N.Y. Sept. 29, 2020) (defendant failed to show he "suffered from gravely concerning medical ailments" that distinguished him from other inmates); *United States v. Geraldo*, No. 11 Cr. 1032 (PAE), 2023 WL 2584196, at *4 (S.D.N.Y. Mar. 21, 2023) (defendant's "concern[s] about the dire consequences to him from what would be a second bout of COVID-19" did not justify compassionate release because such concerns were "speculative" and not out of the ordinary); *United States v. Marmolejos*, No. 19 Cr. 626 (PAE), 2021 WL 807128, at *4 (S.D.N.Y. Mar. 3, 2021) (similar).

*Second*, even if Mendez-Rojas had made this threshold showing, the § 3553(a) factors, considered in combination, continue to favor the sentence imposed. Before sentencing, the Court reviewed the parties' extensive submissions and those submitted by victims, and, at sentencing, heard at length from defense counsel and the Government. The Court stated that it had spent more time reflecting on Mendez-Rojas's sentence than on any prior sentencing. *See* Sent. Tr. at 60. The Court then explained why it had discounted the Guidelines recommendation, carefully and in detail reviewed the § 3553(a) factors as applied to Mendez-Rojas, and explained why these required a sentence of 252 months' imprisonment. *See* Sent. Tr. at 59–88. As summarized

9

above, the Court largely found that sentence necessary to reflect just punishment given the gravity of each of Mendez-Rojas's offenses—child sexual exploitation and child pornography.

Nothing in Mendez-Rojas's sparse application for relief under § 3582(c) disturbs that careful analysis. If called upon to do so today, the Court would impose the same sentence as it did in 2013, finding the § 3553(a) factors to demand such a sentence. The shortened sentence that Mendez-Rojas seeks today would disserve these factors, and not respect the seriousness of Mendez-Rojas's two offenses victimizing minors. *See* 18 U.S.C. § 3582(c)(1)(A) (release permissible only if compatible with § 3553(a) factors); *see, e.g., United States v. Butler*, No. 18 Cr. 834-10 (PAE), 2022 WL 17968627, at *3 (S.D.N.Y. Dec. 27, 2022) (denying compassionate release motion where § 3553(a) factors, considered "in totality," disfavored early release); *United States v. Monsanto Lopez*, No. 16 Cr. 643-1 (NRB), 2020 WL 2555305, at *1 (S.D.N.Y. May 20, 2020) (even if defendant could show extraordinary and compelling circumstances, § 3553(a) factors required denial); *United States v. Garcia*, No. 16 Cr. 719-2 (RJS), 2020 WL 2539078, at *2 (S.D.N.Y. May 19, 2020) (same); *United States v. Reese*, No. 12 Cr. 629 (VM), 2020 WL 2554381, at *2 (S.D.N.Y. May 20, 2020) (same). The general difficulty of prison life amid the lockdowns occasioned by COVID-19 cited by Mendez-Rojas, does not, without some showing particular to himself, merit a reduction in sentence. *See, e.g., United States v. LaFord*, No. 11 Cr. 1032-07 (PAE), 2020 WL 4677595, at *2 (S.D.N.Y. Aug. 12, 2020) (denying compassionate release for defendant suffering from medical condition "put[ting] him at high risk status" because, *inter alia*, a reduction in sentence would have been "inconsistent" with § 3553(a) factors); *United States v. Teman*, No. 19 Cr. 696 (PAE), 2024 WL 1235616, at *8–9 (S.D.N.Y. Mar. 22, 2024) (similar); *Geraldo*, 2023 WL 2584196, at *4 (allusion to prison conditions occasioned by COVID-19 did not avail applicant for compassionate release where

§ 3553(a) factors, "in totality," did not support a lesser sentence than imposed); *Romero*, 2020 WL 2490027, at *2 (same). Nor does his parents' declining medical condition.

## CONCLUSION

For the reasons stated, the Court denies Mendez-Rojas's motion for compassionate release. The Clerk of Court is respectfully directed to terminate the motion pending at docket 81 and to mail a copy of this decision to Mendez-Rojas at:

Fed. Reg. No. #65844-054
FCI Allenwood Low
P.O. Box 1000
White Deer, PA 17887

SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: September 30, 2024
       New York, New York